# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **LOUIS MATA, JR., individually and on behalf of all others similarly situated,**<br><br>**vs.**<br><br>**MIDAMERICAN ENERGY SERVICES, LLC** | **DOCKET NO. _____**<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### I. SUMMARY

1. Plaintiff Louis Mata, Jr. brings this lawsuit to recover unpaid overtime wages and other damages from Midamerican Energy Services, LLC ("Midamerican Energy") under the Fair Labor Standards Act ("FLSA").

2. Mata and the other workers like him ("Putative Class Members") regularly worked for Midamerican Energy in excess of forty (40) hours each week.

3. These workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

4. These workers were paid a day-rate. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### II. JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division. Specifically, Mata worked for Midamerican Energy in this District and Division in Poweshiek County, Iowa.

### III. THE PARTIES

7. Mata worked for Midamerican Energy from May 2018 through April 2019 as an inspector on wind turbine construction sites.

8. Throughout his time with Midamerican Energy, Mata received a day-rate with no overtime compensation.

9. His day rate was less than $455.00 per day.

10. Mata's consents to be a party plaintiff is attached as Exhibit A.

11. Mata brings this action on behalf of himself and all other similarly situated workers who were paid by Midamerican Energy's day-rate system.

12. Each of these workers received a flat amount for each day worked without overtime pay.

13. The class of similarly situated workers sought to be certified is defined as follows:

> **All current and former inspectors performing work on behalf of Midamerican Energy Services, LLC who were paid a day rate in the past three (3) years.** (the Putative Class Members).

14. Defendant Midamerican Energy Services, LLC is a Limited Liability Company doing business throughout the United States and may be served through their registered agent, CT Corporation System, 400 E. Court Ave., Des Moines, IA 50309 or wherever they may be found.

### IV. COVERAGE UNDER THE FLSA

15. For at least the past three years, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

16. At all times hereinafter mentioned, Defendant has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

17. At all times hereinafter mentioned, Defendant has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of

the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce—such as inspection equipment, hand tools, computers, automobiles, and cell phones—by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

18. For at least the past three years, Mata and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## V.  FACTS

19. Mata worked for Midamerican Energy on the North English and Ivestor wind fields throughout Southern Iowa.

20. To complete their business objectives, Midamerican Energy rely on inspectors.

21. As an inspector, Mata's primary job duties included inspecting the construction of wind turbines and other construction and production projects as needed.

22. Mata did not have any supervisory duties.

23. Mata did not hire or fire employees.

24. Mata did not exercise discretion and judgment as to matters of significance.

25. To the contrary, Mata worked with his hands.

26. Mata performed manual labor.

27. Mata used hand tools to work on pipelines.

28. Mata worked in the elements and would become dirty as a result of his work.

29. Mata worked in dangerous conditions.

30. Construction sites can be dangerous.

31. Mata did not work in an office.

32. Mata did not manage a business unit.

33. Mata could not make decisions as to matters of significance that would impact overall business operations.

34. Mata's decisions were limited to routine and manual tasks surrounding inspections for Midamerican Energy.

35. Mata was heavily supervised by Midamerican Energy.

36. Mata was required to follow Midamerican Energy policies and procedures.

37. Mata reported to Midamerican Energy on a regular basis.

38. Midamerican Energy determined the pay practice through which Mata was compensated.

39. Midamerican Energy did not guarantee Mata a salary.

40. Midamerican Energy did not provide Mata overtime pay.

41. Midamerican Energy employed Mata for purposes of the FLSA.

42. Midamerican Energy set Mata's schedule.

43. Midamerican Energy required Mata to work over 40 hours in a week.

44. Midamerican Energy typically scheduled Mata to work 10-12 hour shifts, for as many as 6-7 days a week.

45. Midamerican Energy keeps accurate records of the hours, or at least days, of Mata's work.

46. Midamerican Energy required Mata to report his time to them.

47. Midamerican Energy required Mata to report his expenses to them.

48. Midamerican Energy approved Mata's time worked.

49. Midamerican Energy approved Mata's expenses.

50. Separate from his day rate, Mata was paid a per diem.

51. The per diem Mata was paid was not considered wages.

52. Mata was paid other reimbursements.

53. The reimbursements Mata was paid were not considered wages.

54. Mata's work was production based.

55. Mata's work was integral to the operation of Midamerican Energy's construction projects.

56. Mata was prohibited from deviating from Midamerican Energy's quality standards.

57. Mata is a blue-collar worker.

58. Mata is not exempt under any white-collar exemption.

59. Mata was not guaranteed a salary.

60. Midamerican Energy cannot demonstrate that Mata was paid on a salary basis in accordance with the FLSA.

61. Midamerican Energy cannot demonstrate that Mata was not its employee for purposes of the FLSA.

## VI. FLSA Violations

62. Mata incorporates the preceding paragraphs by reference.

63. As set forth herein, Midamerican Energy violated the FLSA by failing to pay Mata and the Putative Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

64. At all relevant times, Midamerican Energy has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

65. Midamerican Energy employed Mata and each member of the Putative Class.

66. Midamerican Energy's pay policy denied Mata and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA.

67. Midamerican Energy owes Mata and the Putative Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

68. Midamerican Energy knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Mata and the Putative Class is willful.

69. Due to Midamerican Energy's FLSA violations, Mata and the Putative Class Members are entitled to recover from Midamerican Energy for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

70. The improper pay practices at issue were part of a continuing course of conduct, entitling Mata and Putative Class Members to recover for all such violations, regardless of the date they occurred.

### VII.   COLLECTIVE ACTION ALLEGATIONS

71. Mata incorporates all previous paragraphs and alleges that the illegal pay practices Midamerican Energy imposed on Mata were likewise imposed on the Putative Class Members.

72. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

73. The Putative Class Members were subject to the same working conditions as Mata.

74. The Putative Class Members are similarly situated based on Midamerican Energy's common pay policy.

75. The Putative Class Members are similarly situated based on Midamerican Energy's common practices applied to all Putative Class Members.

76. The Putative Class Members are similarly situated because Midamerican Energy' plan regarding the use and pay of Putative Class Members is similar.

77. The Putative Class Members' primary job duties included inspecting construction and energy production projects as needed.

78. Putative Class Members did not have any supervisory duties.

79. Putative Class Members did not hire or fire employees.

80. Putative Class Members did not exercise discretion and judgment as to matters of significance.

81. To the contrary, Putative Class Members worked with their hands.

82. Putative Class Members performed manual labor.

83. Putative Class Members used hand tools to work on energy production projects.

84. Putative Class Members worked in the elements and would become dirty as a result of their work.

85. Putative Class Members worked in dangerous conditions.

86. Putative Class Members do not work in an office.

87. Putative Class Members do not manage a business unit.

88. Putative Class Members cannot make decisions as to matters of significance that would impact overall business operations.

89. Putative Class Members' decisions are limited to routine and manual tasks surrounding inspections for Midamerican Energy.

90. Putative Class Members are heavily supervised by Midamerican Energy.

91. Putative Class Members are required to follow Midamerican Energy policies and procedures.

92. Putative Class Members report to Midamerican Energy on a regular basis.

93. Midamerican Energy determined the pay practice through which all Putative Class Members are compensated.

94. Midamerican Energy did not guarantee the Putative Class Members a salary.

95. Midamerican Energy did not provide the Putative Class Members overtime pay.

96. Midamerican Energy employed the Putative Class Members for purposes of the FLSA.

97. Midamerican Energy set the Putative Class Members' schedule.

98. Midamerican Energy required the Putative Class Members to work over 40 hours in a week.

99. Midamerican Energy typically scheduled Putative Class Members to work 10-12 hour shifts, for as many as 6-7 days a week.

100. Midamerican Energy keeps accurate records of the hours, or at least days, of the Putative Class Members' work.

101. Midamerican Energy required the Putative Class Members to report their time to it.

102. Midamerican Energy required the Putative Class Members to report their expenses to it.

103. Midamerican Energy approved the Putative Class Members' time worked.

104. Midamerican Energy approved the Putative Class Members' expenses.

105. The Putative Class Members were paid other reimbursements.

106. The reimbursements were not considered wages.

107. The Putative Class Members' work was production based.

108. The Putative Class Members' work was integral to the operation of Midamerican Energy's construction projects.

109. The Putative Class Members were prohibited from deviating from Midamerican Energy's quality standards.

110. The Putative Class Members are blue collar workers.

111. The Putative Class Members are not exempt under any white-collar exemption.

112. The Putative Class Members were not guaranteed a salary.

113. Midamerican Energy cannot demonstrate that the Putative Class Members were paid on a salary basis in accordance with the FLSA.

114. Midamerican Energy cannot demonstrate that the Putative Class Members were not its employees for purposes of the FLSA.

115. Numerous other individuals who worked with Mata indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

116. Based on his experiences and tenure with Midamerican Energy, Mata is aware that Midamerican Energy's illegal practices were imposed on the Putative Class Members.

117. The Putative Class Members were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

118. Midamerican Energy's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

119. Mata's experiences are therefore typical of the experiences of the Putative Class Members.

120. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

121. Mata has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Mata has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

122. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

123. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Midamerican Energy will reap the unjust benefits of violating the FLSA and any other applicable state labor laws.

124. Furthermore, even if some of the Putative Class Members could afford individual litigation against Midamerican Energy, it would be unduly burdensome to the judicial system.

125. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

126. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether Midamerican Energy employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA;

    b. Whether Midamerican Energy's day rate pay practice meets the salary-basis test;

    c. Whether Midamerican Energy's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

    d. Whether Midamerican Energy's violation of the FLSA was willful; and

    e. Whether Midamerican Energy's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

127. Mata's claims are typical of the claims of the Putative Class Members. Mata and the Putative Class Members sustained damages arising out of Midamerican Energy's illegal and uniform employment policy.

128. Mata knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

129. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## VIII. Jury Demand

130. Mata demands a trial by jury.

## IX. Relief Sought

WHEREFORE, Mata prays for judgment against Midamerican Energy as follows:

a. An Order designating the Putative Class as a FLSA collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. For an Order appointing Mata and his counsel to represent the interests of the FLSA Class;

c. For an Order finding Midamerican Energy liable to Mata and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

d. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

e. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/Madison Fiedler-Carlson*
FIEDLER LAW FIRM, P.L.C.
Madison Fiedler-Carlson AT0013712
madison@employmentlawiowa.com
8831 Windsor Parkway
Johnston, IA 50131
(515) 254-1999 - Telephone
(515) 254-9923 - Facsimile

**AND**

Michael A. Josephson
Texas Bar No. 24014780
mjosephson@mybackwages.com
Andrew W. Dunlap
Texas Bar No. 24078444
adunlap@mybackwages.com
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
rburch@brucknerburch.com
**BRUCKNER BURCH, P.L.L.C.**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**